Please be seated. Your Honor, this is the third case of the morning call, 209-1176, Stevenson County Circuit Clerk v. Illinois Labor Relations Board at all. On behalf of the appellant, Mr. Alexander J. Mesny, on behalf of the appellate district, evidence seated. Mr. Mesny, you may proceed. Thank you, Your Honor. May it please the Court. When a clerk's office grows larger due to the number of cases filed in court calls, at some point there has to be an expansion of the management. In March of 2008, the Stevenson County Circuit Clerk created two positions, Chief Deputy of the Criminal Division and Chief Deputy of the Civil Division. Can the clerk, by his or her own action, within the big umbrella of the unions, create positions that are outside of the union? In this case, the union did not object to the creation of the Chief Deputy position, but did object to the creation of the Department Manager position. That was the reason that the clerk filed the union clarification petition, which is the clerk's right. The clerk can create a position, maintain that it is exempt on the basis of supervisory, managerial, or confidential, and then file a union clarification petition. The creation of that position, is it usually done after consultation with the union, or can it be a unilateral action? It can be a unilateral action. In this case, there was consultation with the union, and if memory serves, the ultimate sticking point was... I'm sorry, I retract what I just said there. Initially, it was Chief Deputy Clerk, and the union objected to that. One, because there was an increase in salary. Correct. And two, that one of the people that was raised as Chief Deputy Clerk, and took part of the supervisory position, was also by the bargaining agent, fought with the union. Which created a conflict between one of the persons elevated and the union, and the union objected. And when the union objected at that time, the clerk created the positions of Department Managers. That was the evolution of getting to the issue we're at here. Yes, and that clerk then resigned from the position in the bargaining unit, yes. So, the IRB's Executive Director dismissed the clerk's petition and granted the bargaining unit's competing petition without holding a hearing. The Executive Director can choose to hold a hearing or to dismiss a petition summarily. Because the bargaining unit didn't supply any information, and because the Executive Director didn't hold a hearing, there's nothing in the record that's contrary to the clerk's submissions, and there's no evidence to weigh. We strictly have a paper record with no trial fact weighing the evidence here. Did the clerk ever request a hearing, or is there an issue in this record about whether a hearing was held? The Executive Director has sole authority under the statute, under the regulation, to hold a hearing or not, and summarily dismiss the petition before holding a hearing. And the clerk then appealed that and requested either A, relief, or B, in the alternative, that the remand to the Executive Director to hold a hearing, and that was denied. All right, and what are you specifically asking for here? What I'm specifically asking for here is A, that you hold that the clerks are exempt under one of the three exemptions. On the basis of the documentation. On the basis of the documentation, or in the alternative, that you remand the matter to the Executive Director to hold a hearing, given the fact that the individuals were only in the exempt positions for three months at the time the ILRB rendered its decision, and there would be more evidence today than there was in that truncated period. So, I'd first like to address the supervisory definition. This is a four-part test, and the first prong of the definition is conceded. The supervisor's principal work has to be substantially different from that of the supervisor's subordinates, and I've addressed in the brief why it's correct that that's conceded. I'd like to talk about the second and third parts of the supervisor test together. The second part of the test is that the supervisor has to have authority to, but need not actually do, as explained in the City of Freeport, one of 11 things. The department managers here did five of those things and had authority to do two other things. The third part of the test is that the authority may not be of a routine or clerical nature, but requires the use of independent judgment. According to the City of Freeport, independent judgment means that the employee has to make choices between two or more significant forces of action without input from their superior. The first of the 11 statutory functions is hiring. The department manager of the criminal division hired Deputy Clerk Pifer for her division. The department manager of the civil division hired Deputy Clerk Clark for her division. Each department manager had total discretion as to which employee to hire among the several people who interviewed for each position, and by choosing among two or more potential hires, they by definition exercised independent judgment. Why was the clerk present for a majority of those interviews? The clerk was present for the majority of the interviews because the department managers had never interviewed anyone before. They were newly promoted to the department manager position. And that's clear from the documentation? I believe that that is in the clerk's original submission. However, if it's not, I would note that the clerk's affidavit that the choice of who to hire was completely left to the discretion of the department managers. It's uncontradicted in the record. Who pre-screened the applications? I do not know whether the applications were pre-screened. It may be that everyone who applied received an interview, and I'm sorry I don't have that fact at my fingertips. Wasn't her affidavit uncontested that the two people did the hiring, and the decision was made solely by the department managers? That's correct. That is absolutely uncontradicted in the record. So from the standpoint of at least the record that the board had, there was no contrary evidence of that fact? That's correct. That's correct. And whether the department – I'm sorry, whether the circuit clerks had an interview doesn't matter because the choice of who to hire was explicitly given to the department managers. Pick who you think is best. The second statutory function is transferring. The department managers' written job description gave them authority to transfer employees, and they did transfer employees to different judges and different court halls by creating a new work schedule, which is in the record. They have authority to set the clerk's assignments and schedules, and that required a judgment based on variances in the judge's calls. But isn't there a difference between like a permanent reassignment and a reassignment just temporarily? Oh, you know, Judge so-and-so needs a clerk today. You go over there versus I'm going to move you to the traffic division you used to do divorce. I mean, are we clear what duties, whether the reassignment was temporary or whether it was permanent, was made by these individuals? The reassignment in the record was a permanent reassignment, and that is clear from the record. Obviously, when people are on vacation, there are always going to be reassignments and shuffling around work because that's how a clerk's office works. But that does not qualify as a transfer, if you will. I would agree to that. The third statutory function is the authority to suspend, and the seventh is the authority to discharge or to effectively recommend discharge. The department manager's job description and Bonnie Curran's affidavit, both of which are uncontradicted in the record, specify that department managers can do that. No one had progressed through the progressive discipline policy to the point of suspension or termination. But even in that three-month period, the civil division department manager told Deputy Clerk Clark that he'd be terminated if his performance didn't improve. And the decision to tell an employee that you're going to be fired if you don't improve requires a choice between multiple courses of disciplinary action and evinces discretion in independent judgment. Some of the disciplining, though, more particularly the discipline forms, weren't they signed by the clerk? Most of the discipline forms were signed by the department manager, although at least some were countersigned by the clerk, that's true. The eighth statutory function is the authority to direct, and the IRB case, County of Lake, establishes several different activities that encompass this. The first is reviewing and monitoring work activities. The circuit clerk is physically located on a different floor than the department managers and deputy clerks who share an office. The discipline and the memoranda showing the department managers monitoring the clerks are in the record. And again, I note that the discipline by its nature requires the exercise of independent judgment. The supervisory authority to direct also encompasses providing instructions on how the work is to be performed. We've got the department managers' written memoranda to the clerks on how they're supposed to do it and what they're supposed to do in the record. They wrote the policy and procedures handbook. They had complete authority to rewrite it any way they wanted to, and they actually did it when the clerk was out of the office. And so they exercised discretion in independent judgment in doing that. Your opponent is going to argue that the direction that was given by these individuals was more rote, more administrative than anything other than that. What is your response to that? Well, my response to that is that much of the direction was not rote and administrative. However, I would note that, and the brief actually says, you know, the functions can't be clerical in nature. But if you're managing a clerk's office, clerks do clerical things, and the types of instructions that you're going to give them as a supervisor are going to be to do clerical things in as rote a way as possible because that's the consistency that you're looking for. So I think in the specific case of the clerk's office, you need to take that into account. Well, even if we accepted the fact that maybe some of their duties were administrative, wouldn't they be administrative as a result of some of the policy changes they accomplished to start out their mission as department heads? That's correct. And what's key here is that they had the authority to change the policies to anything they wanted to do, and that's uncontroverted in the record. Without approval of the clerk. Yes. And merely having the authority to make those changes is sufficient. And whether they made large changes or small changes is not the determinative factor. It's the authority that they have. Other factors that support the authority to direct include scheduling work hours, and they did all the scheduling. That's in the record. Assigning work, again, the memorandum telling the clerks what to do is in the record. Approving time off and overtime, and all time off requests were signed by the department managers, and those are all in the record. And formally evaluating work performance when the evaluation is used to affect the employee's pay or employment status. And, again, the discipline that they generated is in the record. So the last of the 11 functions indicating supervisor status is adjusting grievances. The only grievances filed during the three-month period at issue were handled by the criminal division's department manager. The job description is uncontradicted in the record and says that they're supposed to adjust grievances and says they're supposed to meet with new representatives regarding any grievances. And the criminal division department manager, Rolanda Winfrey, actually exercised discretion in independent judgment with regard to grievances because she had authority to adjust and attempted to adjust the grievance that was pending in her division. Now, again, your opponent is going to say that she merely answered some grievances. She didn't resolve any grievances. She attempted to resolve the grievance, and the union rebuffed her attempt to resolve the grievance. But that doesn't mean that she's not supervisory. The union could very well, in response to her letter, have agreed and they could have resolved the grievance during the time period that was at issue here. But the union simply refused. There is a letter from Rolanda Winfrey to Ted Deaver that says this is what happened and let's resolve this and is of the adjusting nature that we're talking about. The authority, regulatory authority, basically says to be a supervisor, an employee must engage in at least one of the enumerated functions. But candidly, even your argument here today, your briefs talk about quantity. And is there any correlation between the number of these 11 functions and supervisory, or is it more the quality of the work done in any one function that the supervisor, the purported supervisor does? I'm not aware of any case that addresses that. But I think given the fact that they actually do five of the 11 things and have authority to do two of the other things, actually did those five things in the three-month period, I think it's overwhelming evidence that they're really supervisors. And I think counsel is going to say, well, they're not doing as much as they could. And so it seems to be more of quantity than quality. In the context of a clerk's office, I don't know what more they could do to be a supervisor. They are running the office day to day, and that's clear from the record. They're disciplining people. They're training people. They're writing the employee handbook. They're telling them what to do. They're telling them where to go. And they're disciplining them, and they're addressing their grievances. And I don't know what else a supervisor could do in terms of quality that they're not doing. They really are running the office. And when Bonnie Curran was injured and was out of the office for a few months, they actually did her job too. But are they running the office at the request or at the direction of the clerk just to help the clerk out? Well, the record is clear that they have final authority in things that they do, and particularly in the policy and procedure handbook and how they run the office. And the record is also clear. Hiring and firing? Yes. And disciplining? Yes. They have sole authority in picking who to hire, and they have sole authority in choosing whether somebody needs to be fired. And it was up to the department manager to decide whether to fire a clerk or not, and she told the clerk, improve or I'm going to fire you. In answering the question regarding quality versus time and numbers, does the city of Freeport case pretty much answer that question? Are you referring to the amount of time? Preponderance. Preponderance. Yes, yes. And, in fact, the 10th statutory function, the authority to discipline, was conceded by the executive director, but the only issue there was that the executive director thought they didn't spend a preponderance of time doing that. And there are a lot of cases that try to define what constitutes a preponderance, and while the board construes the term preponderance to mean more than 50 percent of the supervisor's time, the majority of cases don't. What the appellate court says is that whether a person is a supervisor should be defined by the significance of what that person does for the employer, regardless of the time spent on particular types of functions. And I'm referring to the 1996 Department of Central Management Services case there. Which says that superiority is important, not just numbers. Right. Preponderance means superiority, not just numbers. But, again, I'm struggling with, and I'm going to ask your opponent as well, I'm struggling with the independence separate and apart from the clerk from what I'm reading in the record and in the briefs. I don't know how they could be more independent than being able to choose who they're going to hire of the applicants, and I don't know how they could be more independent than choosing whether to fire someone and they had authority to rewrite the procedures handbook any way they wanted to. That, to me, indicates that they have as much authority as you could have. I'm sorry, did my time run or was that? Yes. I would like to reserve a little time if possible to at least talk about the confidentiality issue. You'll have your time. Thank you. Thank you. Good morning, Your Honors. Good morning. Counsel. I'll start right in with the question about independence because one of the three factors at issue on supervisory authority. Is that Mr. Siegel? Yes, I'm sorry. This is Attorney General Evan Siegel on behalf of the Board and its members. The second factor at issue on supervisory authority is whether or not the employee exercises independent judgment by actually carrying out some duty. Inherent in that statutory definition is the requirement that the employee do something. And we've been talking a lot and Ambrose Brooklyn Winfrey here didn't exercise any independent authority. Why not? Because Clerk Curran, the theme that runs through this record is that Clerk Curran is involved in every aspect of this office. Big things and little things. Policy and personnel matters. She conducts interviews. She's the contact person on incoming resumes. She oversees the deputy assignments to particular courtrooms. She controls facets of vacation, leave, and sick time. Well, doesn't the county board handle some of those too? And that's not being considered here. I mean, the county board probably for all of its employees says, all right, if you work here for two weeks, you get five days off. If you work here for five weeks, you get a week off. So, I mean, there's especially when you have a political entity, elected officers, there's going to be somebody who's one step up trickling things down, for lack of a better description. That's correct. But the statutory requirement is independent judgment actually carried out. The county board doesn't countersign leave forms for vacation. And there's nothing in the record about that. But the county clerk is an elected statutory office, may even have some constitutional election too, or the circuit clerk through the courts. But she has, in this case it is a woman, has certain responsibilities as a result of her election that can she give away? I'm not sure that there's anything in her responsibilities, statutory or not, that require her to countersign leave forms or to approve transfers between courtrooms. So, her presence infuses every aspect of what these two women do. And we've talked a lot about hiring this morning. I want to set the record straight on that affidavit that counsel has referred to. It says C-241-42 in the record. And the timing of it is very interesting here. Sometime in the fall of 08, between March and October of 08, the clerk decided that she needed these two, and I'm paraphrasing her words, this is the gist of it, she needed these two women to be managers under the act. Now, that sort of puts the legal cart before the horse. Not that there were so many responsibilities in this office of 12 or 15 people, but she needed them to be out of the bargaining unit. She filed a unit clarification petition in late October and then a policy statement about two weeks later. And the executive director, and it's been correctly pointed out earlier, he has some discretion to decide whether to hold a hearing or not or to decide the case on the record. He denied the petition on February 25th, and subsequent to that date, this affidavit from the clerk came into the record, and we accepted it, and it contains a statement about they hired, had sole authority to hire these two replacements. But there was an abundance of information in the record prior to that time, including the JavaScript from sheet of C-7, which says nothing about hiring. It has the word hire in the headline, but what it says, and Your Honor referred to this earlier, all they did was participate in the interviewing process. They conducted interviews. And so these two individuals, vis-a-vis their replacements, they didn't hire. The affidavit says they hired them, but there's other evidence in the record, which was given the weight that it was entitled to. And the executive director is entitled to make reasonable inferences from the documentary evidence about the hiring rule. They screened the applications, these two individuals. They scheduled interviews. And then Clerk Curran sat in, as Your Honor's pointed out, on five of the six interviews, and there is information in the record that says she did it just to sit in. There's nothing in the record about whether these two individuals had ever conducted interviews, but if they hadn't ever conducted interviews, it raises an inference about the managerial supervisory authority as well. Well, this is that old question, how do you get experience if you don't have any experience? And if she's hired these two people to be department managers, who trains them or who gives them? And this record is interesting, and it's about only three months old. We don't know what these people are going to do over years to come. So we have brand new department managers and a statutory office holder who has decided to create these positions to make it more efficient in her office conceivably. So who trains them? And aren't they entitled to be trained, and should that be held against them as supervisors or managers? It's unclear from the record who trained them, but who trained them is not one of the legal standards to decide whether they're actually supervisory or managerial. Well, couldn't it be argued that they would be trained at the time that the clerk sat in on those five or six interviews? I think that's what my colleague is getting at. Well, it could be. That could be a fair inference. What's in the record to rebut her affidavit that the two people, two department managers, do the hiring? A number of things. The job description that I referred to a moment ago. The job description that that was the deputy clerk's. As I understand it, initially the clerk established the position of deputy clerk with the idea that they would become non-union. They ran into problems with the union, and then she formed the position of department manager. She elevated them to that role and did away with their former position. And did the executive director ever make any ruling on the department manager position, or did the department manager come before the alumni board based on the petition of the clerk? The issue before the board was the last position, which was deputy managers. And I would direct Your Honor's attention. And the only issue was deputy managers. Deputy managers. Not deputy. I believe that there was a petition filed by the union. I think the issue before the board was deputy department managers. Correct. Not deputy clerks. Correct. Because that position had gone away. Totally gone away. And I would direct the court's attention in answer to Your Honor's question to C7 of the record, which says department managers and duties. There's about 20 different ones. And these, by the way, track almost verbatim the language of the statute. This was created by the clerk when she decided that she needed these people to be managerial under the act, in her words. And under hire, you see, it only appears in the headline. But point six says that their job is to conduct initial interviews with all deputy clerks. It doesn't say how they hire. So we don't know from the record who selected the final interviewees, who made the offers to them. We have this affidavit that says something different than this. But there is other information, which I've addressed in my brief, about how little we know about who actually made the hiring decisions. To be sure, Clerk Curran has submitted an affidavit post-denial of the petition, and it was subject to its due weight. I noticed that the decision of the board was based, in large part, on lack of information provided by the clerk. Yes. And with respect to hiring, it would seem to me that if she has an affidavit, which is evidence, that the department managers have the right to hire, that's evidence. Well, it's only evidence if it's not conclusory or hearsay. Well, is the statement the department clerk has the right to hire conclusionary? Yeah, I think it is, given the context. And I've cited two cases in my survey brief and in my brief about conclusory affidavits, the Mica case, if I'm saying that correctly, and City of Peru. The executive director concludes that their role in hiring is minimal or nonexistent, and then additional. And this is a bit of a moving target. And Your Honor has noted as well, and counsel did, that while the executive director based his decision only on 23 days of evidence, well, no one required the clerk to put that little evidence into the record. Perhaps this was a premature application. And to your point, Justice Hutchinson, about learning on the job and growing and doing more things, maybe a year or three from now they do hire or transfer or direct or discipline. But on this record, the board concluded that there wasn't sufficient information to meet the statutory burden. And it was their evidentiary burden to meet, to be sure. You wanted them to actually hire somebody. That would have been evidence to you. Well, yes, because, again, the 11 points that you were talking about earlier, that is one of them. I thought they each hired chief deputy clerks to replace themselves. They sat in on interviews. They screened applications. They called prospective people. And Clerk Curran infused the process. The application for these positions said contact Bonnie Curran, not send a letter to the personnel office or the county. Contact Bonnie Curran. And she sat in on five of the six interviews. To the legal point, better question, counsel was up here about the 11. And I think you were asking, Your Honor, about how many do any one of those is sufficient. They are disjunctive. But we have argued that none of the five acts that there is evidence that these two individuals performed were met. Before you get into those 11, though, there is that independent prong that we started out talking about, about exercising independent judgment by choosing between two different significant courses of action without any substantial input and actually doing them. If the court finds that that factor is lacking because of Bonnie Curran's ubiquitousness in every facet of this office, it need not address those individual 11 factors because to be supervisory, you must meet all three factors that are at issue here, three of the four under the statute. So when warnings went out to the, I can't remember the number, but some of the employees who were making personal phone calls, that is not, that wasn't an independent action on behalf of, I can't remember if it was the criminal or the civil department manager. I think it was the criminal manager, it was Winfrey. And there were only two instances in the record of verbal warnings that were converted to writing. There was a dozen or so more infractions that were discussed. A verbal warning committed to writing constitutes discipline. Was that countersigned by the clerk? Yes, it was. That was my next point. Both of them were countersigned by Clerk Curran. So even in this area where supposedly, according to the job description, they disciplined people, Clerk Curran is once again involved in this. Clerk Curran should not be told, even though they work in her office. She should not be told. She should not in any way indicate that she's aware of this. So in the event there's litigation, she can just sit back and say, I didn't know anything. No, not at all. But the fact that there's a space on these boilerplate forms for her signature raises an inference as to whether the verbal warning had to be ultimately agreed upon by Clerk Curran. It's more than her being notified. She could have been notified by a memo if it were put in the file. I'm sorry, Your Honor, I'm thinking of a question. Well, I mean, it's obvious to me that whoever heads the office, the clerk of the court, circuit court, it would be very embarrassing for her if there was discipline exercised by a department manager relative to an employee, and she didn't know about it. Yes, and to be sure, the verbal warning is the first step in progressive discipline. This is not where a cause could be discharged. And how you get that verbal warning to her, I think, is not that critical in my mind. Right. It's not whether you put it on the warning slip that she'd be given a copy or checked off. Or she gets an e-mail about it. So I don't think that's necessarily any strong evidence that the clerk did not exercise independent right to discipline. Excuse me, your time is up, by the way. Okay. Well, we thank the court and would respectfully ask that you affirm the decision of the court. Thank you. Thank you. Rebuttal. I'd first like to address the contention about hiring and the affidavit being different from the job description. The affidavit is very clear that the department manager's authority expanded between the time the job description was written and the time the actual hiring was done. And the affidavit says very clearly that they had the choice of who to hire. So there can be no inference drawn from the fact that the job description says something different because there's an affidavit in the record which is uncontradicted, which explains the exact sequence of events and that they had sole authority at the moment of hiring. And that's the only thing that's in the record. Justice Hutchinson brought up the fact that the clerk is an elected official. Isn't that all the more reason why the clerk may be more of a micromanager than maybe in other positions? Which would be something that would bolster your opponent's argument? I don't know that that's the case because the clerk has hired two department managers to actually manage the departments. It is true that the clerk has a statutory mandate. The clerk can't decide that the clerk's office is going to start a benefits program for the community or something like that. The clerk is constrained, which in some instances may make it look like the department managers aren't supervisors, but they really are. They're really doing all the supervisory things. There are a lot of duties under the umbrella of supervising, and we've kind of been going through those. She does, as a result of her elected position, keep the reins on them. Would you not agree? I wouldn't agree with that because it's not surprising that the circuit clerk has something to do with running the office. That's really what the argument is, that these people can't be supervisors because the actual clerk has something to do with running the office. If I own a business and I have a supervisor on the shop floor, that doesn't make the supervisor not a supervisor because I own the business. Because she's the clerk, we'll have something to do, but that does not disqualify the supervisors from being actual supervisors, especially when they're hiring and firing. With regard to the clerk signing off on the verbal warnings that were reduced to writing, first of all, all the warnings were reduced to writing, but only some were reduced to writing to be shown to the employees. In addition to the clerk signing off, the administrative assistant signed off too, and that's not because the administrative assistant had to approve what the department managers did. It's just because everybody had to see this, and it was important. The fact that the clerk signed off on them does absolutely not raise an inference that the clerk was running this process because the affidavit says in Paragraph 5 that the department managers issued all discipline during the time they were department managers. That's uncontradicted in the record, and so there can't be an inference from the mere fact that her signature is on three of these warnings. Well, it doesn't say approved or disapproved. It just has her signature, correct? That's correct. I didn't address this initially, so I know I can't know, but I'd like to direct the justices to the brief concerning the employee's status as confidential employees, particularly regarding the same arguments I made regarding the unrebutted information in the record, because I think that carries the day there too. And I'd also like to mention that in my reply brief, I realized as I was preparing, I inadvertently cited an administrative regulation of the Illinois Employment Labor Relations Board and indicated it was a regulation of the Illinois Education Labor Relations Board and indicated it was a regulation of the ILRB, and that was the citation to 80 Illinois Administrative Code 1110.160C. What page is that on? I'm sorry. I'm very sorry that I can't find it by scanning the brief. Just give me the correct site again. Yes, the site is 80 Illinois Administrative Code 1110.160C, and that is a regulation for the Illinois Educational Labor Relations Board. Thank you. All right. Thank you. The case is taken under advisement, and the court stands it useless.